**TEXAS DEPARTMENT OF PUBLIC SAFETY OFFICERS ASSOCIATION, Billy Don Ivey, Jerry Moore, Charlie Adams, Mary Pat Becnel (Now Mary Pat Holt), Jeff Heard, Jeff Heard & Co., Petitioners,**

v.

**Lane DENTON, Respondent.**

No. D–4557.

Supreme Court of Texas.

Argued Sept. 22, 1994.

Decided April 13, 1995.

Earl L. Yeakel, III, Amanda Foote, Clark, Thomas & Winters, Austin, for petitioners Texas Dept. of Public Safety Officers Ass'n, Billy Don Ivey, Jerry Moore, Charlie Adams and Mary Pat Becnel.

Robert C. May, Guy M. Hohmann, Nicholas S. Bressi, Hohmann & Werner, Austin, for petitioners Jeff Heard and Jeff Heard & Co.

Susan Dasher, Kim D. Brown and Paul D. Keeper, Austin, for respondent.

ENOCH, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, HECHT, CORNYN and SPECTOR, Justices, join.

We are asked what can a trial court do when a civil plaintiff exercises his Fifth Amendment privilege against self-incrimination and thereupon refuses to comply with discovery. In answering this question, we clarify that a trial court has the authority to respond to an offensive use of an evidentiary privilege by imposing the sanctions authorized by the rules of procedure. TEX. R.CIV.P. 215. The trial court dismissed Lane Denton's cause of action when Denton asserted his Fifth Amendment privilege in response to discovery requests. The court of appeals reversed the trial court and remanded for further proceedings. 862 S.W.2d 785, 787. We affirm, but for different reasons. We conclude that a trial court can ultimately dismiss a party's claims for failing to comply with an order for discovery, but only after first satisfying the procedures governing sanctions. In addition, before imposing a sanction, the trial court must consider whether remedial steps short of sanctions can alleviate the problem. Then, assuming they cannot, the trial court must determine whether a lesser sanction would satisfy the legitimate purpose of the sanction before imposing a death penalty sanction. Consequently we remand the case to the trial court for a reconsideration of the motion to dismiss in light of the factors announced today.

## I. Facts

Lane Denton was terminated by the Texas Department of Public Safety Officers Association (the "Association") under suspicion of misappropriating Association funds. Nineteen months later, on the same day he was subpoenaed to testify before a grand jury, he filed suit against the Association and others on several tort and contract grounds.[1] As discovery proceeded, Denton failed to appear for a scheduled deposition, and the trial court then ordered his appearance for deposition. Subsequently, Denton was indicted for misappropriation of Association property.[2] He attempted to abate his civil case indefinitely until after he was no longer at risk of self-incrimination, but the trial court denied his motion. Although Denton then appeared for his deposition, he refused to answer questions or produce documents. The trial court held another hearing to consider the Association's motions to compel and for sanctions. After the trial court examined the deposition transcript and Denton's answers, it ordered Denton to answer only those questions and produce only those documents that concerned his allegations against the Association. Denton answered some questions, but refused again to answer others directly related to his claim, and the trial court dismissed the action.

On appeal, Denton claimed that the trial court erred because it failed to balance his

---

1. All defendants will be referred to collectively as the Association unless reference to individual parties is appropriate.

2. At oral argument, Denton's attorney explained that the criminal case on the indictment entered against him was set for trial. He also explained that at the time of the discovery requests, Denton was aware that the DPS was conducting an investigation against him that was broader in scope than the specific indictment handed down. Denton is not aware of the nature of this separate investigation or whether it is still ongoing.

right against self-incrimination against the harm the Association would suffer if the suit were abated during the pending criminal suit and while the risk of self-incrimination loomed over him. He also claimed that the dismissal violated his due process rights because his Fifth Amendment rights outweighed any inconvenience that would result from an abeyance. The court of appeals reversed, holding that there was no offensive use of a privilege and that Denton's due process rights were violated by the dismissal, and that the dismissal was an impermissible discovery sanction. 862 S.W.2d at 791, 793.

## II. Trial Court's Power to Dismiss

A trial court has limited authority to dismiss a cause of action on its own initiative. The power to dismiss implicated in the present case is the trial court's power under Rule 215. Tex.R.Civ.P. 215(1)(b). In *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991) (orig. proceeding), we held that sanctions imposed by a trial court must be just, there must be a direct relationship between the offensive conduct and the sanction imposed, and the sanction must not be excessive. *Id.*

## III. Denton's Fifth Amendment Claims

■ Denton had the right to assert his Fifth Amendment privilege to avoid civil discovery if he reasonably feared the answers would tend to incriminate him. *See Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir.1979) ("Wehling was under no obligation to disclose to CBS information he reasonably believed might be used against him as an accused in a criminal prosecution."). Nevertheless, the resulting use of the privilege was an offensive use. Denton used a privilege to protect information that was privileged, but also essential to the de-

fense. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 161 (Tex.1993).

■ The Fifth Amendment can be asserted in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924); *see Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). Generally, the exercise of the privilege should not be penalized. *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967); *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964).

The importance of the freedom from self-incrimination notwithstanding, the role of the Fifth Amendment in civil cases when asserted by a plaintiff presents certain problems not found when the privilege is asserted in a criminal context.[3] Because of the difference between the civil and criminal context, the United States Supreme Court has allowed juries in civil cases to make negative inferences based upon the assertion of the privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). Also, when a plaintiff invokes the privilege against self-incrimination, the trial court can subsequently prohibit the plaintiff from introducing evidence on the subject, and such an act of judicial discretion does not constitute penalizing the plaintiff's use of the privilege. *See Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 576 (1st Cir.1989). The rule against penalizing the use of the privilege does not prohibit a trial court from taking acts to ensure that the civil proceeding remains fair.

A plaintiff who uses the privilege to protect relevant information from a defendant

---

3. Several commentators have explained that the privilege may not have as broad an application in civil proceedings between private, nongovernmental parties as it does in criminal prosecutions. *See* Heidt, *The Conjurer's Circle—the Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062, 1065 ("[T]he policies behind the privilege do not apply with full force in civil cases and do not preclude allowing plaintiffs some remedies to reduce the disadvantage they suffer when the privilege is used against them."); *Penalizing the*

*Civil Litigant Who Invokes the Privilege Against Self-incrimination*, 24 U.Fla.L.Rev. 541, 546 (1972) ("[W]here a lawsuit is between two private parties, neither side possesses the broad investigatory power of the government. Thus, since no possibility of abuse of governmental power exists in civil cases, absolute interpretation of the self-incrimination appears not as necessary as in criminal actions where the government is a party.").

"use[s] his Fifth Amendment shield as a sword." *Wehling,* 608 F.2d at 1087. In other words:

> The plaintiff ... obviously had the right to claim the privilege, but he cannot eat his cake and have it too. The defendant also has certain rights, one of which is to defend this lawsuit and to develop an affirmative defense which may well destroy the plaintiff's right to maintain his action.

*Levine v. Bornstein,* 13 Misc.2d 161, 174 N.Y.S.2d 574, 578 (N.Y.Sup.Ct.1958), *aff'd,* 7 A.D.2d 995, 183 N.Y.S.2d 868, *aff'd,* 6 N.Y.2d 892, 190 N.Y.S.2d 702, 160 N.E.2d 921 (1959). Therefore, at this point we borrow from the offensive use line of cases to determine what type of conduct is susceptible to sanction.

### IV. Offensive Use Doctrine

■ The offensive use line of cases are subsets of sanctions cases. Even if a party has a valid reason to avoid discovery, such as an evidentiary or constitutional privilege, that party, when appropriately ordered by the trial court, must elect whether to maintain the privilege or risk suffering a sanction. *E.g., Republic Ins.,* 856 S.W.2d at 161; *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 107 (Tex.1985) (orig. proceeding); *Henson v. Citizens Bank of Irving,* 549 S.W.2d 446, 449 (Tex.App.—Eastland 1977, no writ); *Ginsberg,* 686 S.W.2d at 107 (holding that a court may force the party avoiding discovery to choose between maintaining the privilege and risking a sanction or revealing the privileged information) (approving *Henson,* 549 S.W.2d at 449).

The theory underlying the offensive use line of cases is that a plaintiff who is seeking affirmative relief should not be permitted to maintain the action, and at the same time maintain evidentiary privileges that protect from discovery outcome determinative information not otherwise available to the defendant. This Court, in *Republic Insurance v. Davis,* 856 S.W.2d 158 (Tex.1993), defined three elements necessary to conclude whether an offensive use of an evidentiary privilege is occurring: A. a party must be seeking affirmative relief; B. the party is using a privilege to protect outcome determinative information; C. the protected information is not otherwise available to the defendant. 856 S.W.2d at 161. These steps identify situations where it would be unfair to allow a party to both seek relief and deny to the defense essential evidence. Once an offensive use is shown, alternative steps follow which define the courses of action a trial court may then take: Upon a finding of offensive use, the plaintiff either 1. waives the privilege or 2. risks sanction from the trial court. The parties agree that the *Republic Insurance* standard governs in determining whether an offensive use occurs when a civil plaintiff asserts his Fifth Amendment privilege against self-incrimination. The Association argues that the court of appeals misapplied the *Republic Insurance* test and therefore erred in finding that none of the prongs of the test were satisfied. We agree.

### A. Affirmative Relief

■ The first prong of the *Republic Insurance* test asks whether the party asserting the privilege is seeking affirmative relief. In *Republic Insurance,* the party exercising the privilege was seeking declaratory judgment which did not implicate any affirmative relief. The court of appeals below, however, attempted to reason by analogy that this prong of the *Republic Insurance* test applied to the facts in this case. 862 S.W.2d at 790. It held that by seeking an abatement, Denton was not seeking affirmative relief as contemplated by *Republic Insurance. See Republic Insurance,* 856 S.W.2d at 163. We disagree. Denton was seeking damages as a part of his claims. The first element is satisfied.

### B. Outcome Determinative

The second prong of the *Republic Insurance* test requires that "the privileged information sought must be such that, if believed by the factfinder, in all probability it would have been outcome determinative of the cause of action asserted.... The confidential communication must go to the very heart of the affirmative relief sought." *Id.* The court of appeals reviewed the questions asked and the documents sought at the June 11, 1992 deposition and determined that while some of the questions in response to which Denton asserted his privilege were

outcome determinative, others were not. 862 S.W.2d at 790. The court of appeals reviewed the questions asked and the documents sought at the June 11, 1992 deposition and determined that while some of the questions in response to which Denton asserted his privilege were outcome determinative, others were not. 862 S.W.2d at 790. The court then held that since all questions were not outcome determinative, the second prong of the *Republic Insurance* test was not satisfied. This conclusion is incorrect.

First, we note that at the discovery hearing, the trial court narrowed the scope of the questions it ordered Denton to answer to only those questions that pertained to the claims made by Denton against the Association. It was thereafter that Denton, again, asserted his Fifth Amendment privilege against self-incrimination. These questions tracked the language used in Denton's petition. For example:

* What information do you allege that Billy Don Ivey gave the Travis County District Attorney's office?

* What misinformation or false statements do you allege that [Jerry] Moore, a defendant in this action, disseminated about you to members of the board of directors of the [Association]?

* What false and misleading information did Jerry Moore give the Travis County District Attorney's office?

* What false and misleading information do you contend that defendant Charlie Adams gave the Travis County District Attorney's office?

* What false and misleading information do you contend that defendant Frank Holland gave the Travis County District Attorney's office?

* What false and misleading information do you contend that defendant Mary Pat Becnel gave the Travis County District Attorney's office?

* What false and misleading information do you contend that defendant Jack Pate gave the Travis County District Attorney's office?

* What false and misleading information do you contend that defendant Bob Gorsky gave the Travis County District Attorney's office?

* What other employees of the Texas Department of Public Safety Officers Association do you contend gave false and misleading information to the Travis County District Attorney's office?

* What miscellaneous gossip ... do you contend [was used] to violate your right to privacy?

* What public humiliation and emotional distress do you contend that you suffered as a result of the defendants?

* What business relations and contracts did you contend were the subject of interference ...?

* Have you seen a physician with respect to the emotional distress alleged by you ...?

* Are you aware of any such misinformation [disseminated to the Association]?

* Describe ... the lost business opportunities as a lobbyist that you have suffered as a result of defendants.

Several of these questions go directly to the heart of Denton's claims. They asked Denton to specify either what tortious acts the defendants committed, or how he was injured. We hold that the second prong was satisfied. *Republic Insurance,* 856 S.W.2d at 163.

### C. Alternative Sources for Privileged Information

Finally, the court of appeals also erred when it used an all-or-nothing approach in considering the third prong. This prong of the *Republic Insurance* test examines whether the information sought could be obtained without requiring the plaintiff to forgo his privilege: "[D]isclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence." *Id.* The court of appeals concluded that because some of the privileged information sought could be obtained from other sources, the third prong was not satisfied. 862 S.W.2d at 791. The court, however, also recognized that some of the requested information sought could only be obtained through Denton. *Id.* This is enough to satisfy the third prong.

## V. The Remedy

 Because each prong of the offensive use test is satisfied, we hold that the defendants made the requisite showing of offensive use such that they could properly ask the trial court to put Denton to the election. Denton, having chosen not to waive his Fifth Amendment privilege, therefore exposed himself to remedial action by the court. The question remains, though, whether the sanction imposed by the trial court in this case was an appropriate one under the circumstances.

Due process concerns are implicated when a court dismisses a party's cause of action on the basis of that party's use of the privilege against self-incrimination. In *TransAmerican Natural Gas*, this Court set out guidelines for trial courts to consider when imposing discovery sanctions in general. The Fifth Circuit announced similar standards necessary to satisfy due process when a trial court is faced with a plaintiff asserting the privilege against self-incrimination. *See Wehling*, 608 F.2d at 1084. Together these cases provide a framework to determine what options are available and what options are appropriate.

In determining what remedies are available, the court should consider a number of factors. First, the trial court should consider the nature of both the questions asked and the privilege asserted. If the questions ask for facially incriminating answers, such circumstances would cut against the imposition of a harsh remedy. *Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir.1979). On the other hand, the court can look at the questions to determine whether more narrow questions could serve the defendant's discovery needs and allow the plaintiff to avoid the self-incrimination dilemma. The court should also consider whether the privilege is being asserted in a bona fide fear of self-incrimination or merely to avoid discovery or to create delay.

 The court could weigh the resulting unfairness to a defendant if trial were to proceed without the sought discovery. *Wehling*, 608 F.2d at 1087. Or, the court could proceed to trial and consider whether any remedies could be imposed during the trial in the event the plaintiff continued to assert the privilege. As an example, the court could prohibit the plaintiff from introducing evidence on matters about which the plaintiff asserted his privilege. In any event, the court can allow a civil jury to make a negative inference from the assertion of the privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).

Third, the trial court should weigh options for delaying civil proceedings during the pendency of criminal investigations or parallel criminal proceedings. In doing so, the trial court could consider the statutes of limitation for the crimes the plaintiff fears and consider whether and the extent to which the delay would prejudice the defendant's ability to prepare a defense. *Wehling*, 608 F.2d at 1087.

Finally, the trial court should recognize that it would have options to impose remedies in the future if any delay afforded the plaintiff resulted in unanticipated or extraordinary hardships. In other words, if after an extended abatement a defendant cannot prepare a defense, the trial court should determine at that point whether a dismissal is appropriate as the only way to fairly balance the plaintiff's and defendant's rights. *Id.* at 1089.

 These considerations are not unlike those the court should consider before imposing any other sanction. That is to say, a direct relationship must exist between the offensive conduct and the sanction imposed. *TransAmerican*, 811 S.W.2d at 917. Also, to be just, the sanction must not be excessive and should be no more severe than necessary to satisfy its legitimate purposes. *Id.* Consequently, before dismissing a cause of action, the trial court must be convinced that less burdensome remedies would not be effective in preventing unfairness to a defendant. *Id.; Wehling*, 608 F.2d at 1088.

## VI. Conclusion

 On this record we conclude that the trial court exceeded its discretion by dismissing Denton's lawsuit. We remand the case

to the trial judge for further consideration in accordance with this opinion.

GONZALEZ, Justice, joined by GAMMAGE and OWEN, Justices concurring.

I concur with the Court's order remanding this case to the trial court. Dismissing Denton's suit violated his due process rights and impermissibly sanctioned Denton. I disagree that *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding), and *Republic Insurance Co. v. Davis,* 856 S.W.2d 158 (Tex.1993) (orig. proceeding), supply the standards by which to rule in this case. Therefore, I decline to join the Court's opinion. Our case law regarding sanctions for resisting discovery orders should not be applied to this case, in which Denton asserted his **constitutional** privilege against self-incrimination. Also, I disagree that Denton attempted an "offensive use" of his privilege against self-incrimination as we defined it in *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 107 (Tex. 1985) (orig. proceeding).[1] For these reasons, I would affirm the judgment of the court of appeals. 862 S.W.2d 785.

The Court today assumes that the offensive use doctrine applies to an assertion of the privilege against self-incrimination, and that an offensive use of a privilege is sanctionable as an abuse of discovery. 897 S.W.2d 757, 760–62. The offensive use doctrine bars a plaintiff who seeks affirmative relief from asserting a privilege to avoid disclosing information pertinent to an action or a defense to it. *See Ginsberg,* 686 S.W.2d at 107. The doctrine applies to the rules of privilege created under state law which are subject to exceptions and to waiver. *See, e.g.,* Tex.R.Civ.Evid. 503(d), 504(d), 508(c), 509(d)–(e), 510(d), 511. The offensive use doctrine does not apply to the privilege against self-incrimination, because the privilege does not have its source in the state rules but in the state and federal constitutions. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex.R.Civ.Evid. 501 (recognizing the constitutions as sources of privileges apart from the rules of civil evidence). The trial court erred in automatically dismissing Denton's claims upon finding that his assertion of the privilege was an offensive use. In my opinion, this Court similarly errs in subjecting Denton's assertion of a constitutional privilege to analysis as an offensive use and an abuse of discovery, and by concluding that Denton's conduct was sanctionable.

The extended analysis of *TransAmerican* and *Republic Insurance* attempts but fails to justify what the Court allows today—that trial courts may affirmatively penalize a party who asserts the Fifth Amendment privilege so long as the assertion meets the definition of an offensive use. Because Denton was entitled to resist discovery by asserting his constitutional freedom against self-incrimination, he should not be sanctioned. *See Spevack v. Klein,* 385 U.S. 511, 514–15, 87 S.Ct. 625, 627–28, 17 L.Ed.2d 574 (1967) (stating that a court may not penalize a party who asserts the Fifth Amendment privilege). A better course would be to adopt the balancing test the Fifth Circuit Court of Appeals developed in *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084 (5th Cir.1979). Under *Wehling,* a court balances the hardships caused to the parties when one of them asserts a constitutional privilege, but does not threaten sanctions to compel the party to waive his privilege. *See id.* at 1088.

The dangers of compelling Denton or any prospective criminal defendant to testify are real. A prosecutor could use the discovery responses the trial court ordered Denton to make against him in a criminal proceeding. *See United States v. Ballard,* 779 F.2d 287, 291 (5th Cir.) (citing Fed.R.Evid. 801(d)(2)), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986); Woods & Hair, *Criminal Law Issues in Civil Litigation: Fifth Amendment Considerations for the Civil Practitioner, Management of Parallel Proceedings and Pitfalls of Money Laundering Statutes,* 17th Annual Advanced Civil Trial Course U–1, U–1 (1994) (citing *S.E.C. v. Dresser Industries, Inc.,* 628 F.2d 1368, 1376 (D.C.Cir.) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)).

---

1. I agree with the court of appeals "that Denton did not use the self-incrimination privilege as a sword to thwart the discovery process or the civil proceeding as a whole." 862 S.W.2d 785, 790.

Denton's testimony might give a prosecutor a dress rehearsal of Denton's defense to criminal charges. *See* Woods & Hair, *supra,* at U–1. Also, the scope of discovery allowed in a civil trial may exceed what a prosecutor would be permitted in a criminal proceeding. *Id.* at U–4. Therefore, compelling Denton to waive his Fifth Amendment privilege against self-incrimination could prejudice his right to a fair trial in a subsequent criminal case. *See id.* For this Court to ask the trial court to second-guess Denton's fear of prosecution by "[a]ttempting to assess how state and federal prosecutors and their successors will exercise their discretion" is a request for it to engage in idle speculation. *See* Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,* 91 YALE L.J. 1062, 1092 (1982).

The trial court's dismissal of Denton's claims because he asserted the privilege against self-incrimination was a disproportionate response. The trial court forced Denton to choose between his right to a day in court and the right to avoid self-incrimination. The Court's opinion does not relieve the punitive pressure on Denton to waive his privilege. Upon remand, the trial court will again make him choose between asserting his constitutional right to be silent at the cost of the right to prosecute his claims. *See Wehling,* 608 F.2d at 1088 (citing *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), and *Spevack,* 385 U.S. at 515, 87 S.Ct. at 628) (stating that assertion of one constitutional right should not be at the cost of another).

I concur with the Court's general proposition that in some circumstances a trial court may craft remedies if a party's assertion of the Fifth Amendment privilege constitutes an abuse or causes hardship to the opposing party. 897 S.W.2d at 763; *see Wehling,* 608 F.2d at 1089 (noting that a court should "be free to fashion whatever remedy is required to prevent unfairness to [the] defendant"). A party may only assert the Fifth Amendment privilege **in good faith.** Asserting the privilege could be in bad faith, such as if Denton is asserting the privilege and at the same time prolonging the time that criminal proceedings are pending. I would allow Denton to assert his privilege for as long as he does so in good faith. When a civil plaintiff asserts the Fifth Amendment privilege, a trial court should steer wide of judicially compelling waiver of the privilege. It should not force him to choose between giving up his constitutional right against self-incrimination or forgoing his claims.

For these reasons, I join the Court's order remanding this case to the trial court, but I would do so for the reasons set forth in the court of appeals' opinion.